# SUPERIOR COURT.

## AT CHAMBERS.

### THEODORE SHILLABER vs. GILES WALDO et al.

Construction of Statutes relating to the issue of attachments.

Motion by defendants to dissolve the attachment issued in this case upon the following grounds:

1.   The attachment and proceedings under it are void, the Clerk of the Superior Court not being authorised to issue attachments in cases like this.   The authority to issue attachments upon promissory notes rests with the Police Justices of Honolulu and Lahaina, and with them alone.

2.   Sufficient facts are not sworn to in the application for process, to warrant an attachment.

3.   The bond upon which the attachment is founded is insufficient, and is neither in form or substance like that required by law.

4.   The proceedings are irregular and ought to be set aside, the

defendants not having been served with a true copy of the process. The judge's allowance on the back of the writ was never served on defendants.

Mr. Hawes for motion.

Mr. Jasper, contra.

CHIEF JUSTICE LEE. Before proceeding to give a decision upon the important questions involved in this motion, which have been argued with ability and at great length and exhaustion, by the counsel on both sides, the court, after what has fallen from the counsel, feel it to be their duty to say, that whether the holding of this attachment to be formal or informal, good or bad, would in any way affect this court or its officers—that even though the holding of it to be informal and bad were to lay this court—the Chief Justice who sanctioned this writ by his endorsement of allowance-—the clerk who issued, and the marshal who served it—even though, we say, it were to lay them open to the charge of undue reflection and wisdom—nay, more, even though such a decision were to utterly ruin them in a pecuniary way, such considerations ought not, could not, and *will* not have one feather's weight in the decision of these questions. For I trust that the maxim of this court ever has been, and ever will be, that which is so beautifully expressed in the Hawaiian coat of arms, namely, " *The life of the land is preserved by righteousness.*" We know of no other rule to guide us in the decision of questions of this kind, than the supreme law of the land, and to this we bow with reverence and veneration, even though the stroke fall on our own head. In the language of another, ''Let justice be done though the heavens fall." Let the laws be obeyed, though it ruin every judicial and executive officer in the kingdom. Courts may err. Clerks may err. Marshals may err—they do err in every land daily; but when they err let them correct their errors without consulting pride, expediency, or any other consequence.

The first question which arises for decision in this case is, had the clerk of the Superior Court any authority to issue attachments upon promissory notes; for if he has not, then he had no authority to issue the attachment in this case, and the motion to set aside must be granted.

On the part of the counsel for the defendants, it is contended that he has not such authority, and that this power rests with the Police justices of Honolulu and Lahaina, and with them alone. The counsel for the plaintiff denies this ground, and contends that while the Police justices of Honolulu and Lahaina have this power, they have no such exclusive power, but hold it in common with the clerk of the Superior Court and other judicial officers of the kingdom.

To determine this question, we have only to consult the Hawaiian Statutes, giving them such a construction as the plain sense of their language imports, when such sense is plain, and when obscure and ambiguous, such a construction as will be consonant with the real intention of the law makers, with reason, justice, and good discretion. " The true meaning of the statute," says the late and deeply lamented Chancellor Kent, " is generally and properly to be sought from the body of the act itself. But such is the imperfection of human language, and the want of technical skill in the makers of the law, that statutes often give occasion to the most perplexing and distress-

ing doubts and discussions, arising from the ambiguity that attends. It requires great experience as well as the command of a perspicuous diction, to frame a law in such clear and precise terms as to secure it from ambiguous expressions, and from all doubt and criticism on its meaning." 1 Kent's Comm. 461. It is, beyond all question, one of the most difficult tasks that man ever undertook to perform, to write a statute of any length, the meaning of which shall be capable of only one construction. It is a task so great, that perhaps it has never yet been fully accomplished. I remember to have heard that ripe scholar, and great expounder and teacher of the law, Judge Story, once say, that he had been the framer of a great many statutes, which he thought perfectly clear; but no sooner had they gone into operation, than up sprung a multitude of disputes and difficulties concerning their meaning, and what was more wonderful, those disputes and difficulties were not without foundation. Such is the experience of the whole judicial world; and the present investigation into the meaning of the Hawaiian statutes relating to attachments, is but another example of the difficulties on this head.

In entering upon the investigation of the question, whether the clerk of the Superior Court has the authority to issue attachments in cases like this, we shall go back to the first enactment of the legislature on this subject—to. the fountain head, and trace the stream of the law down to the present time. For, says Blackstone, Kent and a host of other authorities, the general system of legislation upon the same subject matter, may be taken into view in order to aid the construction of one statute relating to the same matter, and it is proper to consider statutes *in pari materia*, whether they be repealed or unrepealed. Several acts *in pari materia*, relating to the same subject, are to be taken together, and compared, in the construction of them, because they are considered as having one object in view, and as acting upon one system. The object of the rule is to ascertain and carry into effect the intention; and it. is to be inferred that a code of statutes relating to one subject, was governed by one spirit and policy, and intended to be consistent and harmonious in its several parts and provisions. (1 Kent's Comm. 463, 4th ed.)

The first act of the legislature relating to attachments, was passed at Lahaina, Maui, on the 18th day of May, A. D., 1841, and provides —" If one be in debt to another, and do not cancel it at the time agreed upon, and on that account the creditor becomes anxious and fear lest he should not obtain his debt, he may then go to either of the judges, who will thereupon attach the property of the debtor. (Old Laws, pp. 113, 114.)

This statute it will be seen gave every judge and justice, for *Lunakanawai*, which includes every class of judges and justices in the kingdom, is the word used, it gave every judge or justice in the kingdom, we say, authority to issue attachments upon promissory notes or other debts upon the application of any creditor, making the statement that he had become anxious and feared lest he should not obtain his debt.

On the 16th day of May, 1842, the legislature passed an act amending the statute of May 18th, 1841, in the following words: " If any person enter a complaint to a judge of such a nature that it is necessary to attach property for debt, it shall then be the duty of the

judge to cause such property to be attached as he is acquainted with. But if the plaintiff know of other property he may give notice to the judge, who will cause that property also to be attached.    But if there be any subsequent difficulty in consequence of the attachment having been wrongfully made, the blame and loss shall be on the plaintiff. Old Laws, p. 194.)

It will be observed that this statute, like the first, left it with every judge and justice in the kingdom to issue attachments, when the complaint was of such a nature as to render it necessary.   So the law continued down to the passage of the " Act to organize the Judiciary," by the Legislature, on the 7th day of September, 1847.

In this last mentioned act, we find in Chap. 2, Art. 2, Sections 6 *et seq*, that the police justices of Honolulu and Lahaina upon sworn complaint being made to them setting forth certain facts, in said act mentioned, accompanied by a bond of indemnity, shall have power to issue attachments upon debts and obligations, which include promissory notes.   But in no part of this statute is it said, that they shall have *exclusive* power to issue attachments; and it is a remarkable fact, that wherever in this statute exclusive power or jurisdiction is given to any judge or class of judges, such exclusive power and jurisdiction is expressly named.   By the former statutes on this subject, *every* judge and justice in this kingdom had the power to issue attachments upon promissory notes and demands, and is it reasonable to suppose that the legislature if they intended to take away this power from all the judges, and confine it to the Police Justices of Honolulu and Lahaina, would not have said so, in some language bearing that import?

Such a construction would lead to the most palpable injustice and absurdity.   For the civil jurisdiction of the Police Justices not extending beyond the districts for which they are appointed, it would be saying to every creditor living in any other part of the kingdom than Honolulu and Lahaina, you cannot have process of attachment against your debtor if your demand happen upon a promissory note, however dishonest or fraudulent his conduct may be.   But however unjust or absurd such a construction might be, if it was the plain sense of the statute—if the language of this statute gave them the power, and them only—if there were any restraining words in this statute, confining this right to the Police Justices, this court would feel bound to so construe it; for we fully recognise the rule, that where the expressions of a statute are clear and intelligible, no court has the right to distort the meaning of those expressions, on the ground that they are unanswerable.   " For that were to set the judicial power above that of the legislature, which would be subversive of all government."   If this statute contained any language of the confirming or restraining sense contended for, this court could not discharge it, however repugnant to reason they might deem it, unless it was found to be unconstitutional, or so manifestly contrary to common right and common reason as to render the statute void.

" There are," says Blackstone, " three points to be considered in the construction of all remedial statutes: the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was for which the common law did not provide, and what remedy the parliament hath provided to cure this. And it is the business of the judges to construe the act, so as to suppress

the mischief and advance the remedy." Chancellor Kent in his valuable Commentaries says the same, and such has been the language of all the sages of the law for ages past. (Black. Comm. 87. 1 Kent's Comm. 464.)

Now let us see what the old law was. We have already seen, that it was a law giving the power to every judge to issue attachments, upon the mere statement of the creditor that he had become anxious, and feared lest he should not obtain his debt; and afterwards it was so amended as to give all the judges this power, whenever a complaint was made to them of such a nature as to render it necessary to attach property for debt.

Let us next enquire what the mischief was for which the old law did not provide. The great mischief for which this law did not provide, evidently was, that it did not require the plaintiff to make any affidavit of facts to warrant the issuing of the attachment, or to give any bond of indemnity to the debtor in case he sustained injury by such attachment. The great mischief of this law was, that it placed the debtor's property and business in jeopardy, without giving him any security. The mischief was not, that the right of issuing attachments was placed in the hands of too many judges, but that they had too great powers.

Lastly, what is the remedy the legislature hath provided to cure this mischief? It hath provided that before any person can obtain an attachment, he shall make oath to certain facts sufficient to warrant the attachment, and give a good bond of security to the debtor, in case he is wrongfully injured by such process. This was, beyond doubt, the clear, plain, and just intention of the legislature. It is such an intention as is consonant with justice, reason, and good discretion. It could never have been the intention of the legislature, to give this power to the Police Justices of Honolulu and Lahaina alone, and take it away from every other judge and justice; thereby saying to all creditors, living out of Honolulu and Lahaina, you can have no remedy against your debtors on promissory notes, in case of the fraudulent disposition of their property. Such is not the language of the statute, and such could never have been the intention of the legislature. Such a construction of this statute instead of suppressing mischief, and advancing the remedy, would increase mischief and shorten the remedy.

We are to seek for the true intention of the law-giver, says Kent, and the real intention when accurately ascertained, will always prevail over the literal sense of the terms. The reason and intention of the law-giver will control the strict letter of the law, when the letter would lead to palpable injustice, contradiction and absurdity. (1 Kent's Comm. 461, 462.)

" In construing a statute," says the Supreme Court of the United States, " the intention of the makers is to govern, although such construction may seem contrary to the letter of the statute."

Now judging of this statute, by these sound and well established rules—by comparison with the old statutes, *in pari materia*, and relating to the same subject, will it be said, that without any language to that effect, the legislature intended to take away the right of issuing attachments upon promissory notes, from every judge and justice in the kingdom except the Police Justices of Honolulu and Lahaina,

D

and thus deprive ninety-nine hundredths of the kingdom of the benefit and remedy of this process ?    The proposition is too absurd to stand for a moment.    And if the legislature had stopped at this point, giving no further light upon the subject, we are clearly of the opinion that the Superior Court, or the clerk who issues all the process of that court, would have the authority to issue attachments upon promissory notes.    But happily the legislature have not stopped at this point, but on the 54th page of this same act, Chapter 4, Article 3, Section 1, treating "Of the judicial powers and duties at Chambers," the legislature use the following language : "The respective judges of the courts of record shall keep offices to be called Chambers.    They shall prescribe stated hours," &c.    "They shall possess at Chambers, in matters civil and criminal, cognizable before the said Circuit, Superior or Supreme Courts, all the specific and general powers within their jurisdiction, heretofore conferred by this act on any judge or justice."    Now if "any judge or justice"—if any Police Justice of Honolulu or Lahaina has the power to issue attachments upon promissory notes, and that he has, is beyond question, then any judge of a court of record has the same power—then the judges of the Superior Court have this power, and then has the clerk of the Superior Court, the person whom this act has prescribed on page 31, Sec. 15, as the one who shall issue all the process of this court, that power.

This question being settled, we shall now proceed to enquire how, and upon what conditions, the clerk of the Superior Court is to issue process of attachment upon promissory notes.    Is he to issue it in the manner and upon the conditions of Chap. 4, Art. 1, Sec. 10 of this act, which has been so much under discussion?    Most clearly not. For this section, however obscure it may appear at first reading, and I confess that it is well calculated to mislead both counsel and court upon a slight perusal, will, upon a thorough investigation and comparison with the following sections, be found not to provide for attachments upon promissory notes.    It provides for attachments upon unliquidated demands only, and promissory notes cannot be included in this category.    I say this section is well calculated to mislead court and counsel, for in the Hawaiian version of this same section, we find it commencing as follows: "*Ma na hihia waiwai a pau no na aie i hookaawaleia,*" i. e., in all civil cases involving liquidated demands, whereas in the English version it reads: "In all cases involving unliquidated demands."    But upon reading the remainder of this section and the following sections in the Hawaiian, we find the word "*hookaawaleia*" (liquidated) standing in direct contradiction with, and destroying the sense of all that follows.    Hence, we are bound to conclude that the legislature intended "unliquidated demands" instead of "liquidated demands."    But if not under this 10th section, in what manner and upon what conditions is the clerk of the Superior Court to issue attachments upon promissory notes?    We answer upon the same conditions and in the same manner as the Police Justices of Honolulu and Lahaina.

And now the question arises whether these conditions have been complied with in this case.    And first, are the facts alleged and sworn to in the petition of the plaintiff sufficient?    That part of the act regulating the issuing of attachments in cases like this, (Chap. 2, Art. 2, p. 14, Sec. 6) is as follows: "Upon sworn complaint being

made to either of said justices, by a party or some other person in his behalf, setting forth that his demand was contracted in a fraudulent or deceitful manner, or upon false or unfounded pretences by the debtor, or that the debtor having honestly contracted the debt or obligation, seeks to avoid the payment thereof, by secreting his property, or by intention to transfer the same to some third person with that object, or is about to remove his property out of the jurisdiction of the district, or if not triable before the police justice out of the jurisdiction of the island circuit, or is eluding the service of summons, or is about to quit the island, said justice shall have power to issue an attachment," &c.

The affidavit or sworn complaint founding the process of attachment is a very material and important one, and now let us see, according to a liberal construction of this statute, whether the facts set forth in this sworn complaint are in substance what the statute requires. We say according to a liberal construction, for statutes that are remedial and not penal, are to receive an equitable interpretation, by which the letter of the act is sometimes restrained, and sometimes enlarged so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. (1 Kent's Comm. 464, 4th ed. 1 Blackwood's Comm. 61, note 30, N. Y. ed.) It is the language of a long line of authorities, that a statute is not to be construed according to technical rules, unless such be the apparent meaning of the legislature; and many cases not expressly named may be comprehended within the equity of a statute, the letter of which may be enlarged or restrained according to the true intent of the makers of the law. But notwithstanding this strong current of authorities, and the full power which by statute is vested in this court to restrain and enlarge the harsh letter of the law, when equity requires it, it is a power which this court will exercise with extreme caution, and never without the most mature deliberation, and conviction of its necessity to the ends of justice and the carrying out of the intentions of the legislature. Judging this sworn complaint then, by a liberal construction of the statute, does it contain the substance of what the statute requires? Are the facts it sets forth, namely, that the defendants are disposing or about to dispose of their property to his prejudice and injury, sufficient to warrant the attachment under the statute? The court think not; and therefore the proceedings under it become vitiated.

This, of itself, is ample ground upon which to grant the motion for dissolving the attachment; but as other points of no little importance have been raised in the argument, the court will glance at them, more for the purpose of remarking upon the form of such proceedings, than to give a definite decision upon these questions, such decision being entirely unnecessary to the end sought by the motion. One of these points is, that the bond is not sufficient.

Where the statute prescribes certain forms for petitions, bonds, process, &c., it is not necessary to follow those forms to the very letter and word; and this statute has wisely provided that they "may be" in a certain form, or shall be in "substance" in such a form, without saying they shall be in no other form. Showing plainly that it was the intention of the legislature to point out certain forms to the unskilled, which they might use, and thus enable every man to be his own lawyer. Technicality in forms has been a great and crying evil

in all countries, as all know who have had any thing to do with litigation; and where any man complies with the substance of the statutes in this respect, this court will never consent to set aside his proceedings on the ground of informality.   For this were to entangle justice in the meshes of technicality.   The statutes of Massachusetts have prescribed certain forms for suits, &c., and the Supreme Court of that state have taken the same liberal view in regard to those forms, which we would pursue here.

Where authority to take a bond is wholly derived from statute, if it be taken in a larger sum, or on conditions not required by statute, and be involuntarily given it is wholly void; but where it is not exacted but voluntarily given, the court are inclined to think it would not be void.   For such, as we understand it, is the decision of the Supreme Court of the United States in the case of the United States *vs.* Morgan, found we believe in 3 Washington's C. C. R.

As we said before, the court deem it unnecessary at this time to pass upon the sufficiency or validity of the bond in this case, the object of the motion being reached by the decision that the sworn complaint of the plaintiff is insufficient.

Another question, raised by the counsel for the motion is, that the service of the attachment in this case is insufficient, the endorsement of the judge's allowance on the back of the writ not being on the copy with which the defendants were served.   This is a question not properly before the court at this time, there being no proper evidence before them of the want complained of, the Marshal as yet having made no return of the writ.   And until he makes return, showing what service has been made, the court cannot judge of it.

The proceedings in this case were evidently instituted under the 10th Section of Chap. 4, Art. 1, of the Act to organize the Judiciary, from a misapprehension of the meaning of that section, which applies to unliquidated demands, and conseqently cannot include promissory notes.   That an error of this kind should occur, is not at all to be wondered at, when we reflect that in the Hawaiian version of this section the language is " *na aie i hookaawaleia,*" meaning liquidated demands, and that the statute is a new one, which has never before been construed or adjudicated upon.   The wisest counsel are liable to fall into errors of this kind in instituting process under new statutes, and courts are daily called upon to set aside such proceedings for mistakes similar to this.   Especially are counsel liable to fall into such errors, where the proceedings are of this nature, calling for prompt and immediate action upon sudden emergencies.   Where process of attachment is instituted, what is done must be done quickly, leaving little or no time, in most cases, for deliberation, study or thorough investigation.   This necessary haste leads courts to look favorably upon errors in such proceedings, passing over technicalities and judging them by the substance.   The court having judged the proceedings of this case in that light, but not finding the sworn complaint to meet the substantial requirements of the statute, they must grant the motion and order the attachment to be dissolved.