**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-21-0000530
26-DEC-2023
07:56 AM
Dkt. 15 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

MICHAEL PICKELL,
Petitioner/Defendant-Appellant.

SCWC-21-0000530

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-21-0000530; CASE NO. 2DTA-21-00138)

DECEMBER 26, 2023

RECKTENWALD, C.J., McKENNA, AND EDDINS, JJ., and
CIRCUIT JUDGE TO'OTO'O AND CIRCUIT JUDGE ASHFORD,
ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

We address whether reasonable suspicion existed for a Maui
County police officer to stop a driver who executed a U-turn at

1

a highway intersection lacking signage expressly prohibiting such turns.  Instead, the intersection had left turn only markings and signage.  We hold reasonable suspicion existed.

Maui Police Department Officer Rahul Mehra ("Officer Mehra") stopped Michael Pickell ("Pickell") for making a U-turn at the intersection.  Pickell appeared to be under the influence of alcohol.  Based on indicia of alcohol consumption, field sobriety and breath alcohol tests were performed.  The State of Hawai'i ("the State") then charged Pickell with operating a vehicle under the influence of an intoxicant ("OVUII") in the District Court of the Second Circuit ("district court").

Pickell filed a motion to suppress arguing Hawai'i Revised Statutes ("HRS") § 291C-82(c) (2020)[1] requires an express sign

---

[1]     HRS § 291C-82 provides in full:

> **291C-82  Turning so as to proceed in the opposite direction.** (a) No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet.
>
>     (b) In addition to the prohibition in subsection (a), the director of transportation is authorized to and the counties may by ordinance with respect to highways under their respective jurisdictions prohibit the turning of any vehicle so as to proceed in the opposite direction on the highway at any location where such turning would be dangerous to those using the highway or would unduly interfere with the free movement of traffic.
>
>     (c) The director of transportation and the counties by ordinance with respect to the highways under their respective jurisdictions shall place signs which are clearly visible to an ordinarily observant person prohibiting the turning of a vehicle to proceed in the

2

prohibiting U-turns to make such turns illegal. He maintained that, therefore, Officer Mehra lacked reasonable suspicion to make the traffic stop, requiring suppression of the OVUII evidence. The district court[2] denied the motion. Pickell then entered a conditional no contest plea that allowed him to file this appeal.

We hold reasonable suspicion existed for the traffic stop. Officer Mehra witnessed Pickell execute a U-turn despite the left turn only markings and signage. Contrary to Pickell's implicit assertion, HRS § 291C-82(c) does not preempt the Maui County ordinance requiring drivers to adhere to directional markings and signage. We therefore affirm Pickell's OVUII conviction.

## II. Background

### A. District court proceedings

On February 22, 2021, the State charged Pickell with OVUII in violation of HRS §§ 291E-61(a)(1) and/or 291E-61(a)(3) (2020). Pickell filed a motion to suppress all evidence relating to the alleged OVUII, contending Officer Mehra's traffic stop was an illegal seizure in violation of the Fourth Amendment of the United States Constitution and article I,

---

opposite direction. The signs shall be official signs and no person shall turn any vehicle in violation of the restrictions stated on such signs.

[2] The Honorable Blaine J. Kobayashi presided.

section 7 of the Hawai'i Constitution.  Pickell pointed out that the prosecution must show that a warrantless traffic stop falls within one of the narrowly-defined exceptions to the warrant requirement.  State v. Prendergast, 103 Hawai'i 451, 454, 83 P.3d 714, 717 (2004).  The State responded that Officer Mehra had reasonable suspicion to initiate the traffic stop and then had probable cause to arrest Pickell for OVUII.

At the hearing on Pickell's motion to suppress, Officer Mehra, the only witness, testified as follows.

Officer Mehra was on assignment as an OVUII enforcement officer at approximately 7:20 p.m. on January 26, 2021.  He observed Pickell in the left-turn-only lane with his left-turn signal on at the intersection of Pi'ilani Highway and Ohukai Road.  When Pickell's light turned green, he made a U-turn instead of turning left.

Painted on the ground in Pickell's lane was a left-turn-only sign and a left directional arrow.  There was also left-turn-only signage on the overhanging light directly in front of him.  When Pickell made the U-turn, he drove across double solid yellow lines and a skipped-dash white line.

Officer Mehra then initiated a traffic stop.  Pickell initially said he was going home but later said he was going to Safeway.  He also said he thought the U-turn was legal and that

4

he was from California and did not know if the U-turn was legal in Hawai'i.

There were many locations on Pi'ilani Highway with signs prohibiting U-turns from the left lane, and there was no such sign where Pickell made the U-turn. But the Maui County Code requires drivers to abide by lane markings and traffic signage.

The district court denied Pickell's motion to suppress, ruling that Pickell made an illegal U-turn. Therefore, Officer Mehra's observation of the illegal U-turn gave him reasonable suspicion to stop Pickell's vehicle. The district court also denied Pickell's motion for reconsideration.

Pickell then entered a conditional no contest plea, reserving a right to appeal the district court's denial of his motion to suppress and his OVUII conviction.

**B.   ICA proceedings**

On appeal to the ICA, Pickell contended the district court erred by denying his motion to suppress because Officer Mehra's traffic stop was based on a legal U-turn. The State argued Pickell's U-turn was illegal because he did not follow the traffic control signs and lane markings.

In a summary disposition order, the ICA affirmed the district court. State v. Pickell, No. CAAP-21-0000530, 2023 WL 1178774 (Haw. App. Jan. 31, 2023) (SDO). The ICA determined that even though there was no sign prohibiting U-turns, Pickell

5

was required to make a left turn based on the lane markings and overhead signage. Id. at 3-4. The ICA cited HRS § 291C-31(a) (2020) and Maui County Code ("MCC") § 10.24.100(E) (1965). Id. at 3. The ICA therefore held that reasonable suspicion existed and affirmed Pickell's OVUII conviction. Id. at 4 (citing State v. Estabillo, 121 Hawai'i 261, 270, 218 P.3d 749, 758 (2009)).

## C. Certiorari proceedings

On certiorari, Pickell asserts the ICA gravely erred when it held the district court properly denied his motion to suppress because Officer Mehra's warrantless traffic stop was based on a U-turn not expressly prohibited by a sign as pursuant to HRS § 291C-82(c).

### III. Standards of Review

## A. Motion to suppress

This court reviews

> a ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.' Factual determinations made by the trial court deciding pretrial motions in a criminal case are governed by the clearly erroneous standard, and conclusions of law are reviewed under the right/wrong standard.

State v. Scalera, 139 Hawai'i 453, 459, 393 P.3d 1005, 1011 (2017) (cleaned up).

## B. Statutory interpretation

"Statutory interpretation is a question of law reviewable de novo." State v. Milne, 149 Hawai'i 329, 333, 489 P.3d 433, 437 (2021). When reviewing questions of statutory

6

interpretation, this court is guided by the following principles:

> First, the fundamental starting point for statutory-interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Id. (citation omitted).

## IV. Discussion

We hold Officer Mehra's traffic stop was based on reasonable suspicion and that Pickell's suppression motion was therefore properly denied.

## A. MCC § 10.24.100(E) is not preempted by HRS § 291C-82(c)

Pickell argues his U-turn was legal because there was no sign expressly prohibiting him from making a U-turn at the intersection as purportedly required by HRS § 291C-82(c).[3] The State argues Pickell's U-turn violated MCC § 10.24.100(E), which provides, "In all cases where official marks, buttons, signs or directional arrows painted on the pavement are placed within or adjacent to intersections, no operator of a vehicle shall execute a movement at such intersections, otherwise than as directed and required by such marks, buttons, signs, or arrows."

---

[3]    See supra n. 1.

In essence, Pickell argues HRS 291C-82(c) preempts the Maui County ordinance. We therefore address preemption.

## 1.   The preemption test

As we stated in Ruggles v. Yagong, 135 Hawai'i 411, 353 P.3d 953 (2015):

> A county's power to promulgate ordinances is governed by Article VIII, Section 1 of the Constitution of the State of Hawai'i, which states, "The legislature shall create counties, and may create other political subdivisions within the State, and provide for the government thereof. Each political subdivision shall have and exercise such powers as shall be conferred under general laws."
> (Emphasis added.) Thus, pursuant to the Hawai'i Constitution, a county's powers are limited to those conferred by the legislature under general laws. The legislature has outlined the "General powers and limitations of the counties" in HRS § 46-1.5 (2012). HRS § 46-1.5(13) [2018] provides
>
> > Each county shall have the power to enact ordinances deemed necessary to protect health, life, and property, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute where the statute does not disclose an express or implied intent that the statute shall be exclusive or uniform throughout the State[.]

Ruggles, 135 Hawai'i at 422, 353 P.3d at 964.

HRS § 46-1.5(13) was intended to mandate "the preemption of any ordinance that either conflicted with the intent of a state statute or legislated in an area already staked out by the legislature for exclusive and statewide statutory treatment." Richardson v. City and Cnty. of Honolulu, 76 Hawai'i 46, 60, 868 P.2d 1193, 1207 (1994).

8

A municipal ordinance may be preempted by state law "if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law."  Richardson, 76 Hawai'i at 62, 868 P.2d at 1209 (citations omitted).

**2.    Alternative (1) of the preemption test is not met**

Alternative (1) of the Richardson preemption test requires us to consider whether MCC 10.24.100(E) "covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state."  Id.  In this regard, we have employed a "comprehensive statutory scheme" test.  76 Hawai'i at 61, 868 P.2d at 1208.[4]

---

[4]    In In re Application of Anamizu, 52 Haw. 550, 481 P.2d 116 (1971), we considered whether a city ordinance mandating the certification of electrical contractors by a municipal agency was preempted by a state statutory scheme that governed the licensing of all building contractors.  Richardson, 76 Hawai'i at 61, 868 P.2d at 1208 (citation omitted).  We held the ordinance was preempted by HRS chapter 444, which "established a comprehensive statutory scheme for regulating the contracting business within" the state.  Anamizu, 52 Haw. at 554, 481 P.2d at 118.  Local authorities could not enact additional qualifiers.  52 Haw. at 554, 481 P.2d at 119.

Similarly, in Citizens Utilities Co. v. County of Kauai, 72 Haw. 285, 814 P.2d 398 (1991), we held that

> a county ordinance regulating the height of utility poles was preempted by the combination of HRS § 269-6 (1985), which conferred upon the State Public Utilities Commission (PUC) the power of "general supervision . . . over all public utilities," and a specific regulation of the PUC that governed, inter alia, the minimum requirements for utility pole height.

9

The Statewide Traffic Code was enacted in 1971.  Its legislative history evinces clear legislative intent to allow counties to enact their own traffic ordinances.  1971 Haw. Sess. Laws Act 150.  The purpose of the Code was to provide some uniformity in state traffic regulation.  S. Stand. Comm. Rep. No. 685, in 1971 Senate Journal, at 1102.  But the legislature also recognized that "[m]ost traffic regulation . . . is dealt with by comprehensive traffic ordinances enacted by the several counties."  Id.  The legislature explicitly stated it intended to "have the counties adapt complementary traffic ordinances which would supplement, rather than duplicate the State Law.  To achieve this end, this bill allow[ed] provisions to be made in the various ordinances for situations unique to the particular county."  Id.; H. Stand. Comm. Rep. 157, in 1971 House Journal,

---

Richardson, 76 Hawai'i at 61, 868 P.2d at 1208 (citation omitted; emphasis added).  We noted the statutes contained an "overall scheme" which reserved to the PUC the power to regulate public utilities; the ordinance thus entered an area that was "fully occupied" by general state law.  76 Hawai'i at 62 n.24, 868 P.2d at 1209 n.24.  We therefore declared that "a municipal ordinance, which covers the same subject matter embraced within a [s]tate statute is invalid if the statute discloses an express or implied intent that the same shall be exclusive or, uniform in application throughout the [s]tate."  Citizens Util. Co., 72 Haw. at 288, 814 P.2d at 400.

By contrast, we held in Richardson that the applicable state laws did not preempt the ordinance.  76 Hawai'i at 61, 868 P.2d at 1208.  In that case, the state laws and ordinance did not cover the same topics; "residential houselot leasehold interests in the case of state law . . . and condominium, cooperative, and planned development leasehold interests in the case of [the] [o]rdinance."  Id.  Because the ordinance in Richardson did not concern residential houselot leasehold interests, the ordinance did not impose additional requirements regarding the same subject matter as the statutes. Id.

at 742 ("Other differences between H.B. No. 33 and H.B. No. 33, H.D. 1, reflect the intent that counties be allowed to enact ordinances, which supplement, and in a few clearly expressed instances, supersede state law.")

Thus, legislative history indicates the Statewide Traffic Code was expressly intended to allow counties to pass complementary and supplemental ordinances. Further, in certain instances, the legislative history indicates an intent to allow counties to enact ordinances that supersede state law, not the other way around.

The legislative intent is manifested by statutes within the Code. HRS § 291C-162 (2020) expressly provides that the Statewide Traffic Code "shall be applicable and uniform throughout the State and in all political subdivisions therein provided that any matter not covered in this chapter relating to rules of the road may be subject to appropriate county ordinances in any county." Further, HRS § 291C-163 (2020) expressly states that the Code "shall not be deemed to prevent counties with respect to streets and highways under their jurisdiction from" "[r]egulating traffic by means of . . . official traffic-control devices[.]" HRS § 291C-163(a)(2).

Moreover, the language and legislative history of HRS § 291C-82 does not indicate "a comprehensive state statutory scheme with an express or implied intent to be exclusive and

11

uniform throughout the state" as to U-turn signage. See Richardson, 76 Hawai'i at 62, 868 P.2d at 1209. The original version of the statute only contained what is now subsection (a):

> **Sec. -82. Turning on curve or crest of grade prohibited.** No vehicle shall be turned so as to proceed in the opposite direction upon any curve, or upon the approach to or near the crest of a grade, where such vehicle cannot be seen by the driver of any other vehicle approaching from either direction within five hundred feet.

1971 Haw. Sess. Laws Act 150, § 82 at 339.

In 1974, HRS § 291C-82 was amended to add subsections (b) and (c):

> (b) In addition to the prohibition in subsection (a), the director of transportation is authorized to and the counties may by ordinance with respect to highways under their respective jurisdictions prohibit the turning of any vehicle so as to proceed in the opposite direction on the highway at any location where such turning would be dangerous to those using the highway or would unduly interfere with the free movement of traffic.
>
> (c) The director of transportation and the counties by ordinance with respect to the highways under their respective jurisdictions shall place signs which are clearly visible to an ordinarily observant person prohibiting the turning of a vehicle to proceed in the opposite direction. The signs shall be official signs and no person shall turn any vehicle in violation of the restrictions stated on such signs.

1974 Haw. Sess. Laws Act 133, § 3 at 236. The purpose of the 1974 amendment was to prohibit U-turns at highway locations "other than a curve or an approach to or near the crest of a grade." S. Stand. Comm. Rep. No 897-94, in 1974 Senate Journal, at 1107.

HRS § 291C-82 originally only addressed U-turns at curves and crests. The amendment required signage prohibiting U-turns at dangerous highway locations. The statute does not even mention intersections. And HRS §§ 291C-162 and 291C-163(a)(2) expressly allow for ordinances like MCC § 10.24.100(E).

Thus, HRS § 291C-82(c) does not preempt MCC § 10.24.100(E) under the first alternative of the Richardson preemption test.

### 3. Alternative (2) of the preemption test is also not met

The second alternative to the preemption test asks whether an ordinance conflicts with state law. Richardson, 76 Hawai'i at 62, 868 P.2d at 1209. "A test to determine whether an ordinance conflicts with a statute is whether it prohibits what the statute permits or permits what the statute prohibits." Waikiki Resort Hotel, Inc. v. City and Cnty. of Honolulu, 63 Haw. 222, 241, 624 P.2d 1353, 1366 (1981) (citations omitted).[5]

---

[5] In Richardson, we acknowledged that even though Waikiki Resort Hotel, Inc. was not "strictly speaking a preemption case," it was nonetheless instructive. 76 Hawai'i at 62 n.24, 868 P.2d at 1209 n.24.

In Ruggles, we addressed whether the Lowest Law Enforcement Priority of Cannabis ("LLEP") was preempted in its entirety by state law. 135 Hawai'i at 412, 353 P.3d at 954. Passed by voter initiative, the LLEP required law enforcement activities related to all offenses other than the possession or cultivation of cannabis for adult personal use be a higher priority than activities related to the adult personal use of cannabis. 135 Hawai'i at 413, 353 P.3d at 955. We affirmed the ICA's holding that the LLEP conflicted with and was preempted by state law. 135 Hawai'i at 418, 422, 353 P.3d at 960, 964. We held the LLEP also conflicted with state law requiring the state attorney general and county prosecuting attorney to investigate and prosecute violations of the statewide penal code. 135 Hawai'i at 418, 353 P.3d at 960. The LLEP could not usurp the attorney general's duty to prosecute violations of the statewide penal code. Id. We therefore held the LLEP conflicted with, and was thus preempted by "state law governing the investigation and prosecution of alleged violations of the Hawai'i Penal Code." Id.

MCC § 10.24.100(E) does not conflict with HRS § 291C-82. The statute requires signs prohibiting U-turns to be posted at areas deemed dangerous and that drivers not execute U-turns at such locations. As noted, the amendment requiring signage appears to have been intended to apply to highway locations and does not refer to intersections. The ordinance requires that a driver follow the directional movements exhibited on markings and signage at intersections.

Abiding by signs, pavement markings, and traffic signals as required by MCC § 10.24.100(E) would not cause a driver to violate HRS § 291C-82(c). Drivers executing left turns as required by the signs satisfy MCC § 10.24.100(E); they do not violate HRS § 291C-82(c) because they are not executing U-turns against prohibitive signage. Alternatively, if an intersection has a sign prohibiting a U-turn as well as a sign and markings indicating left turn only, a driver could adhere to both by making a left turn.

The statute and ordinance can therefore co-exist; neither permits what the other prohibits. See Waikiki Resort Hotel, Inc, 63 Haw. at 241, 624 P.2d at 1366. There is no conflict.

Hence, contrary to Pickell's assertion, MCC § 10.24.100(E) is not preempted by HRS § 291C-82.

**B.    As Pickell's U-turn violated applicable law, reasonable suspicion existed for the traffic stop**

Article I, section 7 of the Hawai'i Constitution ensures the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated[.]"  Haw. Const. art. I, § 7.  "A stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures."  State v. Heapy, 113 Hawai'i 283, 290, 151 P.3d 764, 771 (2007) (citation omitted).  A warrantless search or seizure is presumed invalid "unless and until the prosecution proves that the search or seizure falls within a well-recognized and narrowly defined exception to the warrant requirement."  Prendergast, 103 Hawai'i at 454, 83 P.3d at 717 (citation omitted).

> A stop of a vehicle for an investigatory purpose constitutes a seizure within the meaning of the constitutional protection against unreasonable searches and seizures.
> In determining the reasonableness of wholly discretionary automobile stops, this court has repeatedly applied the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968).  Guided by Terry, we stated in State v. Barnes[, 58 Haw. 333, 568 P.2d 1207 (1977)]:
>
> > To justify an investigative stop, short of arrest based on probable cause, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.  The ultimate test in these situations must be whether from these facts, measured by an objective standard, a [person] of reasonable caution would be warranted in believing that criminal activity was

15

> afoot and that the action taken was
> appropriate.

State v. Bolosan, 78 Haw. 86, 92, 890 P.2d 673, 679 (1995) (some citations omitted; cleaned up).

Pickell's U-turn clearly violated MCC § 10.24.100(E). As noted by the ICA, it also violated HRS § 291C-31(a), which provides that "[t]he driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with law[.]"

Hence, Officer Mehra had reasonable suspicion to justify the traffic stop. Thus, the district court did not err by denying Pickell's motion to suppress.

## V.    Conclusion

We therefore affirm the Intermediate Court of Appeal's February 28, 2023 Judgment on Appeal, which affirmed the District Court of the Second Circuit, Wailuku Division's September 15, 2021 Judgment and Notice of Entry of Judgment.

Jacqueline R. Dyer                    /s/ Mark E. Recktenwald
and William H. Jameson, Jr.,
with her on the briefs,               /s/ Sabrina S. McKenna
for petitioner
                                      /s/ Todd W. Eddins

Renee Ishikawa Delizo
for respondent                        /s/ Faaunga L. To'oto'o

                                      /s/ James H. Ashford