**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-23-0000733**
**19-SEP-2024**
**08:08 AM**
**Dkt. 68 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
COREY CAMPBELL, also known as
COREY RYAN TAYLOR, also known as
RONIE CABILI, Defendant-Appellant

CAAP-23-0000733

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-22-0000339(1))

SEPTEMBER 19, 2024

LEONARD, ACTING CHIEF JUDGE, WADSWORTH AND NAKASONE, JJ.

OPINION OF THE COURT BY LEONARD, ACTING CHIEF JUDGE

Defendant-Appellant Corey Campbell (**Campbell**) appeals from the September 29, 2023 Sua Sponte Order Striking "Ex Parte Motion for Payment of Costs; Order" Filed On September 12, 2023 (**Sua Sponte Order**), and the November 17, 2023 Order Denying [Campbell's] Motion for Reconsideration of Ex Parte Motion for

Payment of Costs (**Order Denying Reconsideration**), both entered by the Circuit Court of the Second Circuit (**Circuit Court**).[1]

The dispositive issue in this interlocutory appeal is whether, pursuant to Hawaii Revised Statutes (**HRS**) § 621-9(b) (2016), the State of Hawaiʻi is required to pay travel costs for Campbell, an indigent criminal defendant who resides outside of Hawaiʻi, to return to Hawaiʻi for trial. Based on the language of the statute and its legislative history, we hold that HRS § 621-9(b) governs extradition expenses only; the statute does not otherwise mandate that the State bear the expenses related to a criminal defendant's return to Hawaiʻi for trial.

I. RELEVANT BACKGROUND

On May 4, 2022, Plaintiff-Appellee State of Hawaiʻi (**State**) filed a complaint charging Campbell with: Count One – Assault Against a Law Enforcement Officer in the First Degree, in violation of HRS § 707-712.5(1)(a) (2014);[2] Count Two – Exclusion

---

[1] The Honorable Kristin M. Hamman presided.

[2] HRS § 707-712.5 provides:

> **HRS § 707-712.5 Assault against a law enforcement officer in the first degree.** (1) A person commits the offense of assault against a law enforcement officer in the first degree if the person:
>
> (a) Intentionally or knowingly causes bodily injury to a law enforcement officer who is engaged in the performance of duty; or
>
> (b) Recklessly or negligently causes, with a dangerous instrument, bodily injury to a law enforcement officer who is engaged in the performance of duty.
>
> (2) Assault of a law enforcement officer in the first degree is a class C felony. The court shall, at a minimum, sentence the person who has been convicted of this offense
>
> (continued...)

2

of Intoxicated Person From Premises, in violation of HRS § 281-84 and subject to HRS § 281-102 (2020);[3] and Count Three – Disorderly Conduct, in violation of HRS § 711-1101(1)(a) and/or (b) and/or (c) (2020).[4]

---

[2](...continued)
to:

    (a)    An indeterminate term of imprisonment of five years, pursuant to section 706-660; or

    (b)    Five years probation, with conditions to include a term of imprisonment of not less than thirty days without possibility of suspension of sentence.

[3]    HRS § 281-84 provides:

    **HRS § 281-84 Exclusion of intoxicated person from premises; penalty.** Every person who, being under the influence of liquor, enters any premises licensed for the sale of liquor, or being under the influence of liquor there remains after having been requested by the licensee or any person in the licensee's employ to leave the premises, shall be guilty of a misdemeanor and upon conviction thereof shall be punished as in section 281-102 provided.

    HRS § 281-102 provides:

    **HRS § 281-102 Other offenses; penalty.** If any person violates this chapter or any rule or regulation in effect by authority of this chapter, whether in connection therewith a penalty is referred to or not, for which violation no penalty is specifically prescribed, the person shall be imprisoned not more than six months or fined not more than $1,000, or both.

[4]    HRS § 711-1101 provides, in relevant part:

    **HRS § 711-1101 Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:

    (a)    Engages in fighting or threatening, or in violent or tumultuous behavior;

    (b)    Makes unreasonable noise;

    (c)    Subjects another person to offensively coarse behavior or abusive language which is likely to provoke a violent response;

    . . . .

(continued...)

The complaint alleges that on May 3, 2022, Campbell caused bodily injury to a Maui police officer, and while under the influence of liquor, Campbell entered a premises licensed for the sale of liquor and remained after being requested by the licensee to leave.  The arresting officer's Declaration in Support of Warrantless Arrest states "[Campbell] was asked to leave their establishment because she was belligerent," and when the officer arrived at the scene "she appeared to be intoxicated as she was slurring her words and unsteady on her feet."  The declaration further states that "[w]hile at the Kihei Police Station, I was attempting to put a seat belt on [Campbell] when she bit me on my right bicep, breaking skin and leaving a mark."

Campbell resides in Massachusetts.  The incident resulting in criminal charges occurred while she was visiting Maui using money left to her by her recently departed father.

On May 4, 2022, the District Court of the Second Circuit, Wailuku Division (**District Court**), set bail at $7,000.[5]  Campbell obtained a surety bail bond for that amount the same day.  The District Court's May 4, 2022 order imposing conditions of release required Campbell remain in Hawaiʻi absent court approval.  On May 6, 2022, an amended order was entered, which specifically allowed Campbell to "fly back home to Massachusetts

---

[4](...continued)
    (3)  Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist.  Otherwise disorderly conduct is a violation.

[5]    The Honorable Christopher M. Dunn presided.

and live in Massachusetts." Campbell waived her right to a preliminary hearing on the felony charge against her, and the case was committed to the Circuit Court.

Campbell returned to Massachusetts. The record does not reflect any further in-person court appearances. Campbell made eleven appearances by Zoom. There were occasions when Campbell did not appear, bench warrants were issued, and the warrants were then recalled at further hearings.

On September 11, 2023, in advance of an October 23, 2023 trial date, Campbell filed an Ex Parte Motion for Payment of Costs; Order (**Motion for Travel Costs**). The Motion for Travel Costs was supported by a declaration of court-appointed counsel stating that Campbell lived in Massachusetts, was "indigent, unemployed and cannot afford to travel back to Maui for her trial," and requested funds for her round-trip plane ticket, lodging, and transportation. The motion cited HRS § 621-9(b) as authority for the request. On September 12, 2023, the Circuit Court entered an order approving the Motion for Travel Costs.

On September 29, 2023, the Circuit Court entered the Sua Sponte Order, stating only that it "inadvertently" entered the September 12, 2023 order.

Thereafter, there were various failed plea negotiations, changes to the trial date, and a motion to dismiss, which was orally denied.

On November 9, 2023, Campbell filed a Motion for Reconsideration of Ex Parte Motion for Payment of Costs (**Motion**

**for Reconsideration**), seeking reconsideration of the Sua Sponte Order, which was orally denied at a hearing on November 13, 2023. The Order Denying Reconsideration was entered on November 17, 2023.

On November 20, 2023, the case was called for jury trial. Campbell appeared by Zoom and requested a short evidentiary hearing on indigency before moving forward. After Campbell was sworn in and examined by counsel and the Circuit Court, the court found based on Campbell's testimony that Campbell lacked income from any source, did not have any assets, was eligible for court-appointed counsel, and was indigent. Campbell then orally requested an interlocutory appeal, regarding "that she cannot afford to come back to Hawaii for trial, even though she would like to," and referenced HRS § 621-9. The Circuit Court noted that the Judiciary would not front the costs because she chose to leave Hawaiʻi pending trial, and therefore, she is required to return on her own, or if the court issues a bench warrant, then the State will pay for the cost of an extradition to bring her back for trial. The court granted the request to file an interlocutory appeal. Written orders were entered thereafter, including on November 27, 2023. Campbell filed a Notice of Appeal on December 16, 2023.

II.   POINTS OF ERROR

Campbell raises a single point of error, contending that the Circuit Court erred when it denied the Motion for Travel Costs and when it denied the Motion for Reconsideration.[6]

III. APPLICABLE STANDARDS OF REVIEW

"Statutory interpretation is a question of law reviewable *de novo*."  State v. Pickell, 154 Hawaiʻi 50, 53, 544 P.3d 1287, 1290 (2023) (citation omitted).

IV.  DISCUSSION

Campbell argues that, pursuant to HRS § 621-9, as an indigent criminal defendant traveling from outside Hawaiʻi in order to be physically present at her trial, the cost of her airfare, ground transportation, and a per diem must be paid by the State.  On appeal, Campbell further argues that her constitutional rights have been violated by the Circuit Court's failure to order the State to bear her travel costs.[7]

---

[6]     The State objects to this court's consideration of Campbell's point of error based on Campbell's failure to comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 10(b)(4), because fewer than all transcripts were ordered, but Campbell failed to file a statement of points of error within the time period required by the rule.  Upon review, we conclude that there is a sufficient record before this court to decide the matter. Campbell's appellate counsel is nevertheless reminded that failure to comply with applicable HRAP requirements could result in sanctions.

[7]     The Office of the Public Defender, as *Amicus Curiae*, filed a brief in support of these arguments, and asserted that sound public policy warrants fiscally efficient travel arrangements for indigent defendants, *i.e.*, without the added expenses associated with extradiction, and without requiring indigent defendants to subject themselves to pretrial detention.  The consideration of such public policy arguments is firmly within the purview of the Legislature.

A.    HRS § 621-9(b)

HRS § 621-9 provides, in relevant part:

> **§ 621-9  Witness and defendant expenses; budgetary procedure**.
>
> (b)  Whenever the presence of a defendant in a criminal case or in a proceeding under chapter 704 or a petitioner in a post conviction proceeding who is outside the judicial circuit is mandated by court order or bench warrant to appear, the cost of airfare, ground transportation, any per diem for both the defendant or petitioner and sufficient law enforcement officers to effect the defendant's or petitioner's return, shall be borne by the State.  All such expenses shall be certified by the court or public prosecutor or the attorney general.  Duly certified claims for payment shall be paid upon vouchers approved by the state director of finance and warrants drawn by the state comptroller.  The court may order the nonindigent defendant or petitioner who was returned to the State of Hawaii to reimburse the State for the costs of such extradition or return as specifically described above.

As the Hawaiʻi Supreme Court has explained:

> Our statutory construction is guided by the following well established principles:
>
>> [O]ur foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>>
>> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>>
>> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.

Kanahele v. State, 154 Hawaiʻi 190, 201, 549 P.3d 275, 286 (2024) (citations omitted).

Moreover, "[t]he legislative history of a statute remains relevant 'even when the language appears clear upon

8

perfunctory review.'" State v. Alangcas, 134 Hawaiʻi 515, 526, 345 P.3d 181, 192 (2015) (citation omitted).

HRS § 621-9(b) states a minimum of three requirements for State-paid travel expenses: (1) the person seeking payment must be a defendant in a criminal case or in a chapter 704 proceeding,[8] or a petitioner in a post-conviction proceeding; (2) the person must be outside the court's jurisdiction; and (3) the person must be mandated by court order or bench warrant to appear. A court may order a non-indigent defendant to reimburse the State.

Campbell's isolated reading of portions of HRS § 621-9(b) is argued as support for State-sponsored travel expenses for any indigent out-of-state defendant ordered to appear for trial in Hawaiʻi. However, the cost-shifting language specifically references the airfare, ground transportation, and per diem, for reference to "sufficient law enforcement officers to effect the defendant's or petitioner's return," in addition to travel expenses for the defendant or petitioner. And the provision that "[t]he court may order the nonindigent defendant or petitioner who was returned to the State of Hawaii to reimburse the State for the costs of such extradition or return" strongly suggests that HRS § 621-9(b) applies solely to extradition proceedings, and at the very least, creates an ambiguity as to whether the statute applies to voluntary returns not affected by extradition.

_____

[8] An HRS chapter 704 proceeding may involve, *inter alia,* a determination of whether an individual shall not be held penally responsible for their conduct or a determination of the individual's fitness to proceed.

The legislative history of HRS § 621-9(b) establishes that its payment provisions were intended to apply only to extradition proceedings. In 1980, the Legislature passed Senate Bill No. 2869 (**S.B. 2869**), which was signed into law as Act 306. Act 306 modified HRS § 621-9 by adding a new subsection (b). 1980 Haw. Sess. Laws Act 306, § 1 at 961.

The reports of the Hawai'i Senate Judiciary and Senate Ways and Means Committees, which were the first two committees to hold hearings on S.B. 2869, confirm that the intent of the bill was to make the State responsible for all extradition costs, because some costs were being borne by the courts. Both committee reports contained the following statement:

> The purpose of this bill is to include expenses to return defendants to a judicial circuit in the same budgetary procedure as is currently used for witness expenses.
>
> Under present practice some expenses relating to defendants are processed through the courts. <u>A more appropriate method is to remove the courts from having to cover such expenses and have the State bear all costs of the extradition procedure</u>.

S. Stand. Comm. Rep. No. 60 (Judiciary) & No. 196 (Ways and Means), in 1980 Senate Journal, at 1048, 1100 (emphasis added). Both the House and Senate Conference Committee reports on the bill in its final form, S.B. 2869 S.D. 3, H.D. 1, C.D. 1, reiterated that the purpose of the bill was to have the State pay for all extradition costs:

> Under present practice, some expenses relating to defendants are processed through the courts. A more appropriate method is to <u>remove the courts from having to cover such expenses and have the State bear all costs of the extradition procedure</u>. This also relieves the court from the financial burden of such expenses.

10

Conf. Comm. Rep. No. 11-80, in 1980 House Journal, at 1074 (emphasis added); Conf. Comm. Rep. No. 9-80, in 1980 Senate Journal, at 943 (emphasis added). There is no indication in any of the Legislature's standing committee or conference committee reports that Act 306 was intended to require the State to pay the travel costs of criminal defendants outside of an extradition procedure. See S. Stand. Comm. Rep. No. 518-80, in 1980 Senate Journal, at 1241; H. Stand. Comm. Rep. Nos. 705-80 & 817-80, in 1980 House Journal, at 1604-05, 1659.

Campbell argues the language of the subsection is "more than clear" in requiring the State to pay travel costs for "any defendant 'who is outside of the judicial circuit [and] is mandated by court order or bench warrant to appear.'" However, Campbell's "plain language" interpretation would require the State to advance the travel costs and per diem expenses for any out-of-state defendant, whether indigent or non-indigent. HRS § 621-9(b) does not require a court to make a determination of indigency as a prerequisite to payment. Rather, it is only after extradition or return has occurred that "[t]he court may order the nonindigent defendant or petitioner who was returned to the State of Hawaii to reimburse the State for the costs of such extradition or return." HRS § 621-9(b) (emphasis added). In addition, HRS § 621-9(b) does not limit payment of travel expenses to trial appearances.

We further note that "a rational, sensible and practicable interpretation [of a statute] is preferred to one

11

which is unreasonable or impracticable[.]"  Keliipuleole v. Wilson, 85 Hawaiʻi 217, 221-22, 941 P.2d 300, 304-05 (1997) (citations and internal quotation marks omitted).  Moreover, "[e]very [statutory] construction which leads to an absurdity shall be rejected."  HRS § 1-15(3) (2009).

Reading the statutory language in the context of the entirety of HRS § 621-9(b), and construing it in a manner consistent with its purpose, we conclude that HRS § 621-9(b) was not intended to require the State to pay for travel costs of criminal defendants outside of an extradition procedure.  It would be an unreasonable interpretation of the Legislature's intent, if not a wholly absurd result, to conclude that the addition of subsection (b) to HRS § 621-9 was intended to go so far beyond its stated purpose, which was simply to shift the costs of extradition from the courts to the State.

Accordingly, we hold that the Circuit Court did not err in rejecting Campbell's argument that, pursuant to HRS § 621-9(b), the State was required to advance her travel expenses to return to Hawaiʻi for trial.

B.   Campbell's Constitutional Arguments

Campbell argues that, given the establishment of her indigency, the Circuit Court's failure to order that her travel costs be borne by the State violated her rights under the Fifth, Sixth, and Fourteenth Amendment to the United States Constitution, including her right to equal protection, right to

be present at trial, right to due process, and right to interstate travel.

As the State argues, Campbell did not raise any constitutional issues in either the Motion for Payment of Travel Costs or the Motion for Reconsideration. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." State v. Moses, 102 Hawai&#699;i 449, 456, 77 P.3d 940, 947 (2003) (citations omitted); see also State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) (due process challenge waived where not raised at trial). We conclude that Campbell waived any constitutional challenge to the Sua Sponte Order and the Order Denying Reconsideration based on Campbell's requests to be advanced travel costs to be present at trial. Campbell also waived any argument that her equal-protection-based right to travel was violated by the Circuit Court's entry of the Sua Sponte Order and the Order Denying Reconsideration.[9]

V.   CONCLUSION

For these reasons, the Circuit Court's September 29, 2023 Sua Sponte Order and November 17, 2023 Order Denying

---

[9] To be clear, however, Campbell has not yet been tried on the charges against her. "It is axiomatic that ripeness is an issue of subject matter jurisdiction." Blake v. Cnty. of Kaua&#699;i Plan. Comm'n, 131 Hawai&#699;i 123, 131, 315 P.3d 749, 757 (2013) (citation omitted). This opinion should not be construed as determining or barring trial-related due process, confrontation clause, or other trial-related claims that are currently premature and speculative. See, e.g., People v. Cooks, 306 Cal. Rptr. 3d 536, 537-39 (Cal. Ct. App. 2023); State v. Colsch, 284 N.W.2d 839, 841-842 (Minn. 1979); State v. Ziegenfuss, 74 P.3d 1205, 1206 (Wash. Ct. App. 2003).

Reconsideration are affirmed.  This case is remanded to the Circuit Court for further proceedings.

| On the briefs: | /s/ Katherine G. Leonard<br>Acting Chief Judge |
|---|---|
| Kai Lawrence,<br>for Defendant-Appellant. | /s/ Clyde J. Wadsworth<br>Associate Judge |
| Renee Ishikawa Delizo,<br>Deputy Prosecuting Attorney,<br>County of Maui,<br>for Plaintiff-Appellee. | /s/ Karen T. Nakasone<br>Associate Judge |